**Not for Publication**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SOMERSET ORTHOPEDIC ASSOCIATES, P.A., individually and as assignee and/or attorney-in-fact of P.G., R.G., M.H., C.L., A.M., P.M., F.M., B.M., J.O., M.R., B.S., and F.V., and SPINE SURGERY ASSOCIATES & DISCOVERY IMAGING, P.C., individually and as assignee and/or attorney-in-fact of G.F., M.R., and D.S., <br><br>*Plaintiffs*, <br><br> v. <br><br> HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, et al., <br><br>*Defendants*. | Civil Action No. 19-8783 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter involves an attempt to recover payments for medical services provided to patients because Defendants allegedly underpaid out-of-network medical providers. Presently before the Court are motions to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the following Defendants: (1) Horizon Healthcare Services, Inc. ("Horizon"), D.E. 60; (2) Anthem, Inc. ("Anthem"), D.E. 61; (3) Blue Cross Blue Shield of Alabama ("BCBSAL"), D.E. 62; and (4) Highmark, Inc. ("Highmark"), D.E. 63, (collectively "Defendants"). Plaintiffs Somerset Orthopedic Associates, P.A., and Spine Surgery Associates & Discovery Imaging, P.C., filed briefs in opposition to each motion (D.E. 69-72), to which

Defendants replied (D.E. 75, 76, 78, 79).[1]  The Court reviewed the parties' submissions and decides the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motions are **GRANTED in part and DENIED in part**.

### I.  FACTUAL[2] AND PROCEDURAL BACKGROUND

Plaintiffs, healthcare providers in New Jersey, brought suit as to Defendants' failure to fully reimburse Plaintiffs for the cost of medical care provided to fourteen patients.  The patients were insured under different health benefit plans that are administered by Defendants.  Plaintiffs are out-of-network providers under each plan at issue.  Plaintiffs allege that they obtained an

---

[1] Horizon's brief in support of its motion (D.E. 60-1) will be referred to as "Horizon Br."; Anthem's brief in support of its motion (D.E. 61-1) will be referred to as "Anthem Br."; BCBSAL's brief in support of its motion (D.E. 62-2) will be referred to as "BCBSAL Br."; and Highmark's brief in support of its motion (D.E. 63-1) will be referred to as "Highmark Br.". Plaintiffs' opposition to Horizon's motion to dismiss (D.E. 69) will be referred to as "Horizon Opp."; Plaintiffs' opposition to Anthem's motion to dismiss (D.E. 70) will be referred to as "Anthem Opp."; Plaintiffs' opposition to BCBSAL's motion to dismiss (D.E. 72) will be referred to as "BCBSAL Opp." and Plaintiffs' opposition to Highmark's motion to dismiss (D.E. 71) will be referred to as "Highmark Opp.".  Horizon's reply brief (D.E. 76) will be referred to as "Horizon Reply"; Anthem's reply brief (D.E. 79) will be referred to as "Anthem Reply"; BCBSAL's reply brief (D.E. 78) will be referred to as "BCBSAL Reply"; and Highmark's reply brief (D.E. 75) will be referred to as "Highmark Reply".

[2] The factual background is taken from Plaintiffs' Amended Complaint (the "Am. Compl."). D.E. 40.  When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in a complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Moreover, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).  Here, Plaintiffs include an example of an assignment of benefits and power of attorney as exhibits to the complaint.  Am. Compl. Exs. B, C.  Accordingly, the Court considers these documents.  In addition, Horizon and Anthem maintain that in deciding these motions, the Court can also rely on plan documents as they are discussed in the Amended Complaint.  *See, e.g.*, Horizon Br. at 5 n.4.  Plaintiffs do not appear to disagree.  Accordingly, the Court also considers these documents.  *See* D.E. 22-2, 24-2, 28-2, 63-2.  *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (ruling that, in deciding a motion to dismiss, a court may rely on "a document integral to or explicitly relied upon in the complaint").

assignment of benefits (an "AOB") from each patient and that each patient executed a power of attorney ("POA"),both of which authorize Plaintiffs to pursue claims for payment. Plaintiffs bring this case pursuant to the AOBs and the POAs. Plaintiffs seek reimbursement for the full amount that they billed for the medical services, or the usual, customary and reasonable ("UCR") rate, which Plaintiffs allege is required by each of the health benefit plans at issue.

Plaintiffs filed suit on March 20, 2019, D.E. 1. Horizon, Anthem and BCBSAL subsequently filed motions to dismiss, D.E. 22, 24, 28, and Highmark answered the Complaint, D.E. 25.

On June 21, 2019, Plaintiffs filed the Amended Complaint. D.E. 40. Among other things, Plaintiffs omitted certain state-law based claims in the Amended Complaint and changed the caption to indicate that the claims were brought on behalf of the patients as assignees or attorneys-in-fact. Counts One through Four of the Amended Complaint are asserted pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and Counts Five through Seven are claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and quantum meruit. *Id.*

After Plaintiffs filed the Amended Complaint, the Court terminated the pending motions to dismiss and gave Defendants leave to refile their motions to dismiss as to the Amended Complaint. D.E. 42. On August 16, 2019, all Defendants filed motions to dismiss the Amended Complaint. D.E. 60-63.

## II.     STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

### III. ANALYSIS

#### 1. ERISA Exempt Plans

At the outset, Highmark maintains that the ERISA claims must be dismissed as to it because the two Highmark patients were enrolled in plans that are not governed by ERISA.[3] Highmark Br. at 2; Highmark Reply at 3. Specifically, Highmark contends that F.M. was a participant in a government plan and D.S. participated in a church plan. Highmark Reply at 3. Plaintiffs rely on the plan documents themselves to argue that Highmark fails to establish that either plan falls into an exception for ERISA coverage. Highmark Opp. at 5-6.

---

[3] Highmark raises this issue in the context of a Rule 12(b)(6) motion to dismiss. While not explicitly raised by the parties, whether a plan falls into a Subsection 4(b) exception appears to be an element of a plaintiff's claim rather than a jurisdictional requirement. *See Kaplan v. St. Peter's Healthcare Sys.*, No. 13-2941, 2019 WL 1923606, at *9 (D.N.J. Apr. 30, 2019) ("Plaintiff alleges that the SPHS Plan is a church plan and this fact is integral to the merits of Plaintiff's claim, not the Court's subject matter jurisdiction.").

Certain employee benefit plans are not governed by ERISA. The exceptions include government and church plans. 29 U.S.C. § 1003(b)(1), (2). A government plan is a "plan established or maintained for its employees by the Government of the United States, by the government of any State or political subdivision thereof, or by any agency or instrumentality of any of the foregoing." 29 U.S.C. § 1002(32); *see also Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004) (concluding that plan that was exclusively funded by school district for its employees was an exempt government plan). A church plan is a "plan established and maintained by a church," which includes a plan that was established or maintained by a principal-purpose organization.[4] *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1658, 1663 (2017) (citing 29 U.S.C. § 1002(33)(A)) (punctuation omitted). In this instance, Plaintiffs do not clearly plead that each patient's plan was governed by ERISA. Rather, Plaintiffs plead that the "majority" of patients are covered by an ERISA-governed plan. Am. Compl. ¶ 21. Plaintiffs, however, concede that "a segment of those insured under Horizon[5] may be covered by ERISA-exempt Plans." *Id.* ¶ 22.

As discussed in note 2, the Court can consider plan documents in deciding the current motion because the documents are integral to Plaintiffs' Amended Complaint. *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)). The plan document and accompanying Network Benefits Plan Agreement

---

[4] A principal-purpose organization is a church-associated entity that "fund[s] or manage[s] a benefit plan for the employees of churches or . . . of church affiliates." *Advocate Health Care Network v. Stapleton*, 137 S. Ct. 1652, 1656-77 (2017) (citing 29 U.S.C. § 1002(33)(C)(i)).

[5] According to Plaintiffs, Horizon is a brand name for products and services provided by a group of subsidiaries that "offer, underwrite, or administer benefits." Am. Compl. ¶ 14. The plans at issue here are provided by "Horizon subsidiaries" that are owned and controlled by Defendants. *Id.*

5

for D.S.'s plan states that it is a "managed care PPO network for the Benefits Plan for employees, former employees, retirees and their respective dependents *for the Presbyterian Church (U.S.A.) and related employing organizations*." *See* Hollander Decl. Ex. B at 1 (emphasis added). The summary plan document for F.M. indicates that it governs the group health benefit plan for the "Employee Benefit Trust of Eastern PA CIU 20- Delaware Valley Group," *id.* Ex. A at 1, which is a group of public-school districts in eastern Pennsylvania. Thus, the relevant Highmark plans appear to be maintained for church and government employees, respectively.

Plaintiffs contend that because the plan documents do not specifically state that either plan is exempt from ERISA, the plans are governed by ERISA. Highmark Opp. at 5-6. Plaintiffs, however, make this argument without any legal support and the Court is not aware of any requirement that plan documents explicitly state that the plan is not governed by ERISA for an exception to apply. In addition, every other summary plan document at issue here makes repeated references ERISA, including participants' and the provider's rights and obligations under ERISA. In contrast, the two Highmark plans fail to discuss any rights provided by ERISA, and ERISA is not even mentioned in passing in the summary plan document for F.M. Tellingly, the only reference to ERISA in D.S.'s plan is that "[t]he Benefits Plan is intended to be a 'church plan' as defined . . . in Title I of [ERISA]." Hollander Decl. Ex. B, D.E. 63-2 at 167. Given the fact that Plaintiffs do not plead that either plan is actually an ERISA governed plan, and that the plan documents themselves demonstrate that they are maintained for church and government employees, the Court concludes that both plans are exempt under Subsection 4(b). As a result, Counts One through Four are dismissed as to Highmark.

### 2. Express Preemption of State Law Claims (Counts V through VII)

Plaintiffs bring their state law claims to the extent that their claims "are not associated with an ERISA-governed BCBS Plan and/or are not deemed preempted by ERISA." *See* Am. Compl. ¶¶ 274, 290, 298. Horizon, Anthem and BCBSAL argue that Plaintiffs' state law claims must be dismissed because the plans at issue are ERISA-governed plans, and therefore, are expressly preempted by Section 514(a) of ERISA. *See, e.g.*, Horizon Br. at 12-13. Section 514(a) provides that generally "the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). This express preemption clause has been interpreted broadly in light of the legislative purpose in establishing ERISA as the exclusive means of obtaining a legal remedy related to an employee benefit plan. *See In re Jennings v. Delta Air Lines, Inc.*, 126 F. Supp. 3d 461, 467 (D.N.J. 2015).

"State law" is statutorily defined as "all laws, decisions, rules, regulations, or State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1). "State common law claims fall within this definition." *Atl. Shore Surgical Assocs. v. Horizon Blue Cross Blue Shield of N.J.*, No. 17-8697, 2018 WL 2441770, at *3 (D.N.J. May 31, 2018) (quoting *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012)). And a state law "relates to" a benefit plan "'if it has a connection with or reference to such a plan.'" *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47 (1987) (quoting *Metro. Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739 (1985)). Therefore, a state law claim relates to an employee benefit plan if "the existence of an ERISA plan [is] a critical factor in establishing liability" and the "court's inquiry would be directed to the plan." *1975 Salaried Ret. Plan for Eligible Emps. of Crucible, Inc. v. Nobers*, 968 F.2d 401, 406 (3d Cir. 1992).

In this instance, Plaintiffs assert state law claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and quantum meruit. Am. Compl. ¶¶ 273-302. Each of Plaintiffs' state law claims is premised on the respective plans at issue; Plaintiffs' overarching theory is that they have not been paid in accordance with the plans. *See id.* ¶¶ 278-81. Consequently, Plaintiffs state law claims relate to the employee benefit plans. As a result, Counts Five through Seven are dismissed as to Horizon, Anthem and BCBSAL.

### 3. Lack of Standing

#### a. Assignment of Benefits

Defendants assert that the plan documents for ten patients contain enforceable anti-assignment provisions. Accordingly, Defendants argue that Plaintiffs lack standing to bring claims on behalf of these patients.[6] *See, e.g.*, Horizon Br. at 14-16. Plaintiffs counter that the anti-assignment clauses in the Anthem, BCBSAL and Highmark plans are ambiguous and, therefore, are unenforceable.[7] Anthem Opp. at 12-15; BCBSAL Opp. at 7-9; Highmark Opp. at 8-10.

---

[6] A motion to dismiss for lack of standing is typically brought under Federal Rule of Civil Procedure 12(b)(1). *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012). The Third Circuit recently suggested, however, that a challenge to derivative standing under ERISA, as here, "involves a merits-based determination" under ERISA that is non-jurisdictional and properly brought under Rule 12(b)(6). *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 371 (3d Cir. 2015). In any event, when standing is challenged on the basis of the pleadings pursuant to Rule 12(b)(1), courts apply the same standard of review as a Rule 12(b)(6) motion to dismiss. *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

[7] The plan documents for the four Horizon plans at issue, specifically G.F, C.L., M.R., and B.S.'s plans, state that "[t]he employee may not assign his or her right to take legal action under the Policy to such provider." *See, e.g.*, Alpaugh Cert. Ex. A at 26. Plaintiffs do not adequately explain how this language is ambiguous. The language appears to be clear and unambiguous—it prohibits Plaintiffs from asserting the very claims that they are trying to assert through this litigation. Plaintiffs appear to concede that the anti-assignment clauses in the Horizon plans are enforceable because they only argue that Horizon waived its anti-assignment rights under the plans, not that the anti-assignment clauses themselves are ambiguous. *See* Horizon Opp. at 7-9. The Court addresses Plaintiffs' waiver argument below.

Generally, only a participant or beneficiary under a plan has standing to bring an ERISA claim. 29 U.S.C. § 1132(a)(1). Plaintiffs, as healthcare providers, are neither participants nor beneficiaries. *See Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004). A healthcare provider nevertheless may have standing to assert an ERISA claim if there is a valid assignment of benefits. *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 450 (3d Cir. 2018) (citing *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015)). However, "[a]nti-assignment clauses in ERISA-governed health insurance plans as a general matter are enforceable," provided that the clause is unambiguous. *Id.* at 543.

Courts use traditional principles of contract law to determine the enforceability and scope of assignment and anti-assignment clauses in ERISA-governed plans. *See id.* ("In sum, we perceive no compelling reason to stray from the 'black-letter law that the terms of an unambiguous private contract must be enforced.'") (quoting *Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150 (2009)); *see also Univ. Spine Ctr. v. Aetna, Inc.*, 774 F. App'x 60, 62-63 (3d Cir. 2019) (using contract law to conclude that an anti-assignment clause in ERISA plan was not ambiguous). "Contractual language is unambiguous if it is 'capable of only one objectively reasonable interpretation.'" *Univ. Spine Ctr.*, 774 F. App'x at 63 (quoting *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 76 (3d Cir. 2011)).

In the BCBSAL plan at issue, and under the sub-heading "No Assignment," participants are advised that "we will not honor an assignment by you of payment of your claim to anyone." Palmer Cert., Ex. B at 48. Similarly, Anthem's plan for R.G. states that "[a]ny assignment of benefits, even if assignment includes the provider's right to receive payment, is void." Steinlight Decl. Ex. B at 127. Plaintiffs argue that this language is ambiguous because it only addresses

9

payments and does not apply to other rights, including the right to bring suit. BCBSAL Opp. at 8; Anthem Opp. at 14. The Court disagrees. The anti-assignment clauses are not ambiguous—the plain language of both plans clearly prohibits participants from giving providers like Plaintiffs the right to receive any payments for medical services. *See Enlightened Solutions, LLC v. United Behavioral Health*, No. 18-6672, 2018 WL 6381883, at *3, 5 (D.N.J. Dec. 4, 2018) (concluding that statement that "[a] Claimant may not assign his/her Claim under the Plan to a Nonparticipating Provider without the Plan's express written consent" was an unambiguous anti-assignment clause). That is precisely what Plaintiffs are attempting to do here through the vehicle of a lawsuit. *See* Am. Compl. Ex. B (assigning "all medical benefits and/or insurance reimbursement, if any, otherwise payable to me" to a healthcare provider and giving the healthcare provider the legal right to pursue a claim for such payment). The purpose of the suit is for Plaintiffs to get payment, which is what the anti-assignment provisions plainly and unequivocally prohibit. Accordingly, the Court rejects Plaintiffs' argument that the plan language is ambiguous because it clearly prohibits assignments for payments but does not expressly prohibit bringing a lawsuit to recover such payments.

The remaining Anthem plans are also clear. Plaintiffs argue that the statement "[y]our rights and benefits under a medical option cannot be assigned, sold or transferred to any person" in P.G.'s plan, *see* Steinlight Decl. Ex. A at 93, is ambiguous because "medical option" is not defined. Anthem Opp. at 13-14. However, medical options are discussed at length in the plan document. *See, e.g.*, Steinlight Decl. Ex. A at 41 (comparing medical options available under the plan). In addition, the last sentence in the same paragraph -- "[a]ny purported assignment of right or benefits under the plan will be void and will not apply to the plan," -- makes clear that no rights can be assigned under the plan. *See Univ. Spine Ctr. v. Anthem Blue Cross Blue Shield*, No. 18-

2912, 2018 WL 6567702, at *3 (D.N.J. Dec. 13, 2018) ("Plaintiff also ignores the last sentence of the first paragraph which specifically states, 'You [Patient] cannot assign Your right to receive payment to anyone else[.]'"). Consequently, the Court concludes that anti-assignment clause in P.G.'s plan is clear and unambiguous.

The plan for A.M. reads as follows: "[Y]ou cannot sell, transfer, or assign either voluntarily or involuntarily your benefit under the Plans." Steinlight Decl. Ex. C at 105. Plaintiffs argue that this language is ambiguous because it is not clear which benefit the plan is referencing. But the plan language is clear - on its face, the plan language provides that any benefit under the plan cannot be assigned. Moreover, the summary plan document reviews the "benefits available under the [ ] Plan for full-time and benefits eligible employees." *Id.* at 1. Plaintiffs also argue that this language is ambiguous because it does not explicitly mention the right to commence an ERISA action. For the same reasons as discussed above, this argument is rejected. Finally, F.V.'s plan states that "[t]he coverage and any benefits under the Plan are not assignable by any Member without the written consent of the Plan, except as provided above." Steinlight Decl. Ex. D at 70. The sole exception pertains to a qualified medical child support order. *Id.* Again, the language is clear and not ambiguous.

Turning to the Highmark plan, Plaintiffs argue that the identified anti-assignment clause does not apply to patients under the plan. Highmark Opp. at 10. The Court agrees. Unlike with the other patients' plans, Highmark does not point to an anti-assignment clause in a summary plan document. Instead, the anti-assignment clause appears in a contract between Highmark and the Board of Pensions of the Presbyterian Church (U.S.A.) (the "Board"), through which Highmark agreed to provide services to administer a managed care PPO network for the Board's benefits plan. Hollander Decl. Ex. B. at 1. The provision provides as follows:

11

> No party to this Agreement shall assign any or all rights or obligations hereunder, without advance written consent of the other party, which consent shall not be unreasonably withheld. Highmark may assign or subcontract any or all rights or obligations under this Agreement to a subsidiary or affiliate of Highmark, with notice in advance to the Board.

*Id.* at 21. The anti-assignment provision addresses the rights of Highmark and the Board – not Highmark and benefit plan participants. Highmark fails to point to an anti-assignment clause that pertains to participants' rights under the plan that ultimately resulted from the contract between Highmark and the Board. Highmark's motion is denied on these grounds as to Plaintiffs' claims to recover payments for medical services provided to D.S.

In sum, the Horizon, BCBSAL and Anthem plans addressed above have unambiguous anti-assignment clauses.[8] As a result, Plaintiffs lack standing to assert claims by virtue of the AOBs they obtained from patients who receive benefits through these plans. However, because Highmark fails to identify an anti-assignment clause that pertains to D.S., Plaintiffs have standing to assert their claims with respect to D.S.'s medical services by virtue of D.S.'s AOB.

### b. Waiver

Next, Plaintiffs argue that Defendants waived their rights under the anti-assignment clauses. *See, e.g.*, Horizon Opp. at 7-9. Courts also apply state law to determine whether a provider waived its rights under an ERISA governed plan. *See Am. Orthopedic*, 890 F.3d at 454 (conducting waiver analysis "[u]nder applicable state law"). Pursuant to New Jersey law, "[w]aiver involves the intentional relinquishment of a known right and must be evidenced by a clear, unequivocal and decisive act from which an intention to relinquish the right can be based."

---

[8] As noted, Plaintiffs argued that the relevant clauses were ambiguous, which the Court rejected for the reasons above. The Court further notes that Plaintiffs cited to no binding or persuasive authority indicating that such language was ambiguous.

*Scibek v. Longette*, 339 N.J. Super. 72, 82 (App. Div. 2001). In *American Orthopedic*, the Third Circuit recognized that an insurer could waive its rights under an anti-assignment clause in an ERISA-governed plan. The Third Circuit explained, however, that "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal do not demonstrate an evident purpose to surrender an objection to a provider's standing in a federal lawsuit."[9] *Am. Orthopedic*, 890 F.3d at 454 (internal quotation marks omitted).

Plaintiffs allege that Defendants waived their right to enforce the anti-assignment provisions because Defendants corresponded and directly interacted with Plaintiffs on the status of the submitted claims, *see* Am. Compl. ¶ 217-18, and the need for prior authorizations, *id.* ¶ 59. Plaintiffs further allege that Defendants failed to invoke the applicable anti-assignment clause during these conversations. *Id.* ¶ 36. This is analogous to the conduct discussed by the Third Circuit in *America Orthopedic*; it is routine and does not demonstrate an intentional relinquishment of any known rights. *Am. Orthopedic*, 890 F.3d at 454; *see also Enlightened Solutions, LLC*, 2018 WL 6381883, at *5 ("Plaintiff's arguments that because the Plan processed some of Plaintiff's claims Defendants waived the anti-assignment provision's application . . . [is] without teeth."). Plaintiffs cite no authority to the contrary. Consequently, Plaintiffs fail to plead sufficient facts demonstrating that any Defendant waived its rights under an anti-assignment clause.

### c. Power of Attorney

Plaintiffs maintain that a power of attorney ("POA") from each patient also allows Plaintiffs to assert claims on behalf of the patients "to the extent . . . that Claims were rejected due to an anti-assignment provision." Am. Compl. ¶ 38. Plaintiffs rely on language in *American*

---

[9] In *American Orthopedic*, the Third Circuit applied Pennsylvania law to its waiver analysis "but the standard for waiver is the same in New Jersey." *Enlightened Solutions, LLC*, 2018 WL 6381883, at *4 n.2.

13

*Orthopedic* to support their POA argument.[10]  *See, e.g.*, Horizon Opp. at 10-11.  Defendants counter that the Third Circuit's discussion of the use of power of attorneys to obtain standing in *American Orthopedic* is dicta, and even if it were not, the POAs here are not valid as a matter of law.  *See, e.g.*, Horizon Br. at 18-24.

Defendants contend that as a matter of law, Plaintiffs cannot be attorneys-in-fact because they are not individuals.  Horizon Br. at 19-20.  In New Jersey, a power of attorney is governed by the Revised Durable Power of Attorney Act ("RDPAA"), N.J.S.A. 46:2B-8.1, *et seq.*  The Act provides that "the principal authorizes another *individual or individuals or a qualified bank* . . .

---

[10] The Third Circuit recognized in *American Orthopedic* that there is a critical difference between an assignment and a power of attorney.  Unlike an assignment, "[a] power of attorney . . . does not transfer an ownership interest in the claim, but simply confers on the agent the authority to act on behalf of the principal."  *Am. Orthopedic*, 890 F.3d at 454-55 (internal quotations omitted).  Accordingly, an anti-assignment clause in a plan does not have any bearing on the ability to act through a valid power of attorney.  *Id.* at 455.  The Third Circuit did not ultimately address whether the power of attorney at issue was valid because it concluded that the appellant waived its arguments concerning the power of attorney.  *Id.*  The Circuit, however, recognized that power of attorneys are frequently used in the healthcare context.  Specifically, the Circuit explained that power of attorneys are used

> where patients must rely on their agents when they anticipate even short-term incapacitation after medical procedures, *see Powers v. Fultz*, 404 F.2d 50, 51 (7th Cir. 1968), and where those who anticipate longer-term unavailability, like deployed service members or those suffering from progressive conditions, depend on their designated agents to handle their medical claims and other affairs in their absence, *see, e.g.*, *Bartholomew v. Blevins*, 679 F.3d 497, 499 (6th Cir. 2012) (deployed service members); *Jay E. Hayden Found v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010) (incompetent person).

*Id.*

This observation by the Third Circuit reflects why a person typically authorizes a POA.  Yet, the commentary by the Circuit appears to contemplate a situation distinguishable from the current matter.  It is certainly understandable that a person would authorize a POA while the person is incapacitated or unavailable.  However, this reasoning does not necessarily extend to a medical provider seeking payment for services rendered.

14

known as the attorney-in-fact to perform specified acts on behalf of the principal as the principal's agent." N.J.S.A. 46:2B-8.2(a) (emphasis added). Agent is defined as "the person authorized to act for another person pursuant to a power of attorney," and banking institution "includes banks, savings banks, savings and loan associations and credit unions." N.J.S.A. 46:2B-10. Based on the plain language of the statute, it does not appear that Plaintiffs can be attorneys-in-fact because they are neither individuals nor banking institutions.

Plaintiffs counter that "caselaw confirms that a medical practice named as the attorney-in-fact for a patient is a valid power of attorney." Horizon Opp. at 12. Plaintiffs rely on *Med-X Global, LLC v. Azimuth Risk Solutions, LLC*, No. 17-13086, 2018 WL 4089062 (D.N.J. Aug. 27, 2018), and *Enlightened Solutions, LLC v. United Behavioral Health*, No. 18-6672, 2018 WL 6381883, at *3, 5 (D.N.J. Dec. 4, 2018) to support this argument. But *Enlightened Solutions, LLC* does not address this issue. Rather, in *Enlightened Solutions*, Judge Hillman determined that the plaintiff did not have a valid POA because the POA was not "duly signed and acknowledged" as required by N.J.S.A. 46:14-2.1. 2018 WL 6381883, at *6 (concluding that the document at issue "does not satisfy the requirement of a power of attorney under New Jersey law"). Similarly, in *Med-X Global, LLC*, although Judge Thompson concluded that Med-X "may bring the present suit on behalf of Trejo, as Trejo's attorney-in-fact," the parties did not appear to challenge the validity of the power of attorney. 2018 WL 4089062, at *3. As a result, Judge Thompson did not rule on whether an entity other than a banking institution could be an agent pursuant to the RDPAA.

Thus, no party points the Court to any relevant case law that addresses whether an entity other than one that falls into the definition of "banking institution" can be an attorney-in-fact. Because the RDPAA addresses the ability of a person to be an agent by virtue of a POA, and only provides an exception for entities that fall into the definition of a qualified bank, this Court

concludes that medical practices cannot act as attorneys-in-fact under the RDPAA. Because Plaintiffs cannot be attorneys-in-fact, as a matter of law, the POAs Plaintiffs use here do not convey Plaintiffs standing to assert claims on any patient's behalf.

In sum, Plaintiffs lack standing to assert claims on behalf of the patients with plans that contain an anti-assignment clause, namely the BCBSAL plan, the Anthem plans and four of the seven Horizon plans. BCBSAL and Anthem's motions to dismiss are granted on these grounds and the Court does not address the remaining arguments raised by either Defendant. Horizon's motion to dismiss is also granted on these grounds as to G.F., C.L., M.R., and B.S. But the Highmark plans and three of the Horizon plans, the plans for M.H., P.M. and B.M., do not have anti-assignment clauses and neither Defendant challenges the AOBs that pertain to these patients. As a result, Plaintiffs have standing to assert claims on behalf of these patients.

### 4. Failure to State a Claim

Because Plaintiffs have standing to assert claims on behalf of five patients, the Court addresses Horizon and Highmark's Rule 12(b)(6) arguments for dismissal. Horizon seeks to dismiss the ERISA-based claims asserted against it, and Highmark seeks to dismiss one of the state-law based claims.

#### a. Counts I and II

In Count One, Plaintiffs seek to recover the UCR charges that they allege are owed to them under the relevant plans. Am. Compl. ¶ 237. Count Two is pled in the alternative, and Plaintiffs allege that Horizon violated the fiduciary duty of loyalty it owed to Plaintiffs as beneficiaries of the plans because Horizon did not reimburse at the UCR rate. *Id.* ¶ 256. Horizon argues that Counts One and Two must be dismissed as to the remaining Horizon patients because Plaintiffs

fail to demonstrate that the plans required Horizon to pay 100% of Plaintiffs' billed charges and that Plaintiffs cannot tie their claims to any actual plan terms. Horizon Br. at 24-30.

Section 502(a)(1)(B) provides a plaintiff with the right "to recover benefits due to him under the terms of his plan, [and] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "A plaintiff seeking to recover under [this section] must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *K.S. v. Thales USA, Inc.*, No. 17-4789, 2019 WL 1895064, at *4 (D.N.J. Apr. 29, 2019) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 575 (3d Cir. 2006)). For example, in *Atlantic Plastic and Hand Surgery, PA v. Anthem Blue Cross and Health Insurance Co.*, No. 17-4600, 2018 WL 1420496, *10-12 (D.N.J. Mar. 22, 2018), Chief Judge Wolfson determined that the complaint failed to plausibly state a claim for denial of benefits pursuant to Section 502(a). *Id.* at 10. Chief Judge Wolfson explained that the plaintiff's allegation that the defendants failed to pay the plaintiff's usual and customary amount did not indicate that the defendants were required to do so under the applicable plan. *Id.* Judge Wolfson also noted that several courts have dismissed similar ERISA counts when the complaint failed to identify the plan provision that was allegedly violated. *Id.* at 11 (citing *Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13–552, 2015 WL 3938925, at *5 (D.N.J. June 25, 2015), *aff'd*, 650 F. App'x 106 (3d Cir. 2016)); *see also K.S.*, 2019 WL 1895064, at *4 (dismissing claim for full payment to out-of-network provider pursuant to Section 502(a) because "the Amended Complaint fails entirely to specify which portion of the Thales Plan the alleged underpayment violated"). Plaintiffs' claims here fail for the same reasons. Plaintiffs' claims are premised on the assumption that as non-participating providers, they "are entitled to be reimbursed at usual, customary and reasonable ("UCR") rates." Am. Compl. ¶ 24. Plaintiffs, however, fail to identify plan language to support this assumption.

Plaintiffs point to the definition of "allowed charge" in the definitions section of the relevant plans to demonstrate that the plans support their claim for full reimbursement. *See, e.g.*, Am. Compl. ¶¶ 86, 118. But this definition fails to establish that Horizon was required to pay Plaintiffs' UCR rates. Although the definition of "allowed charge" mentions usual and customary rates, the definition section simply does not establish that Plaintiffs are entitled to be paid the UCR rate here. Again, Plaintiffs must identify a plan term that indicates that Plaintiffs were in fact underpaid because they should have been paid the full billed amount, or the UCR. Plaintiffs fail to do so. Because Plaintiffs fail to sufficiently allege that Horizon was required to pay Plaintiffs' billed amounts under the plans, Counts One and Two are dismissed.

### b. Count III

Count Three asserts a claim based on Horizon's failure to provide plan documents to Plaintiffs in violation of Section 502(c), 29 U.S.C. § 1132(c). Am. Compl. ¶¶ 258-67. Section 502(c) applies to "administrators," which is statutorily defined. 29 U.S.C. § 1132(c); *see also Med-X Global, LLC*, 2019 WL 1923046, at *3 ("[F]or the purposes of assessing statutory penalties under Section 502(c)(1), claims are proper only as against the plan administrator.") (quoting *Mazzarino v. Prudential Ins. Co. of Am.*, No. 13-4702, 2015 WL 1399048, at *10 (D.N.J. Mar. 26, 2015)). Plaintiffs plead that "[i]n offering and administering the BCBS Plans, BCBS functions as a "plan administrator," as the term is defined under ERISA. *Id.* ¶ 44. Administrator is statutorily defined as follows:

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
> (ii) if an administrator is not so designated, the plan sponsor; or
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

29 U.S.C. § 1002(16)(A). Plaintiffs fail to allege plausible facts showing that Horizon meets this definition. As a result, Count Three fails.

### c. Count IV

In Count Four, Plaintiffs assert a claim for attorney's fees and costs pursuant to Section 502(g)(1). Am. Compl. ¶¶ 268-72. Horizon argues that Count Four must be dismissed because a demand for attorney's fees under ERISA is not an independent cause of action. Horizon Br. at 39. Even if true, Count Four is dismissed for a more basic reason. ERISA provides for an award of attorney's fees and costs to parties that prevail on a cause of action authorized by the statute. 29 U.S.C. § 1132(g)(1). Here, all of Plaintiffs' ERISA claims are otherwise dismissed; Plaintiffs cannot prevail on dismissed counts. Consequently, Count Four is also dismissed.

### d. Count VII

As discussed, the relevant Highmark plans are not subject to ERISA because of the government and church exceptions. Because ERISA does not control, neither does ERISA's preemption provision. Highmark nevertheless seeks to dismiss Count Seven, which asserts a claim for quantum meruit, because an express contract precludes awarding relief under the theory of quantum meruit. Highmark Br. at 11. To succeed on a claim of quantum meruit, the following four elements must be met: "(1) the performance of services in good faith; (2) the acceptance of the services by the person to whom they are rendered; (3) an expectation of compensation therefore; and (4) the reasonable value of the services." *TBI Unlimited, LLC v. Clearcut Law Decisions, LLC*, No. 12-3355, 2013 WL 1223643, at *5 (D.N.J. Mar. 25, 2013) (citing *Starkey v. Estate of Nicolaysen*, 172 N.J. 60, 68 (2002)). In addition, "the existence of an express contract excludes the awarding of relief regarding the same subject matter based on quantum meruit." *Kas Oriental Rugs, Inc. v. Ellman*, 394 N.J. Super. 278, 286 (App. Div. 2007).

Although a plaintiff cannot ultimately recover for both breach of contract and quantum meruit claims, this does not preclude a plaintiff from initially pleading both claims. Generally, the Federal Rules of Civil Procedure permit parties to "plead alternative and inconsistent legal causes of action that arise out of the same facts." *Nieves v. Lyft, Inc.*, No. 17-6146, 2018 WL 2441769, at *19 (D.N.J. May 31, 2018). Rule 8 states that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). A party may also "state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). As a result, the Court will not dismiss this claim as to Highmark on these grounds.

Highmark also contends that the quantum meruit claim should be dismissed because Plaintiffs fail to allege that they conferred a benefit on Highmark. Highmark Br. at 11. Plaintiffs plead that they conferred a benefit by providing medical care to patients and Plaintiffs are asserting these claims on behalf of patients through a valid AOB. Because Plaintiffs are asserting their claims via an AOB, a benefit conferred upon the patients is sufficient. The Court, therefore, will not dismiss the quantum meruit claim as to Highmark on these grounds.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motions to dismiss (D.E. 60, 61, 62, 63) are **GRANTED in part** and **DENIED in part**. An appropriate Order accompanies this Opinion.

Dated: April 27, 2020

_____
John Michael Vazquez, U.S.D.J.