**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SOMERSET ORTHOPEDIC ASSOCIATES, P.A., individually and as assignee of M.H., P.M., F.M. and B.M., et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> HORIZON HEALTHCARE SERVICES, INC. d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY, et al., <br><br> *Defendants*. | Civil Action No. 19-8783 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

This matter involves an attempt to recover payments for medical services provided to patients because Defendants allegedly underpaid out-of-network medical providers. Presently before the Court are motions to dismiss the Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by the following Defendants: (1) Anthem, Inc. ("Anthem"), Pepsico, Inc. and Oldcastle, Inc. (individually "Oldcastle" and collectively the "Anthem Defendants"), D.E. 119; (2) Highmark, Inc. d/b/a Highmark Blue Cross Blue Shield ("Highmark"), D.E. 122, (3) Colgate-Palmolive Company ("Colgate"), D.E. 124-1; (4) Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), D.E. 125; and (5) Blue Cross Blue Shield of Alabama ("BCBSAL") and BBVA USA Bancshares, Inc. (collectively the "BCBSAL Defendants"), D.E. 130. Plaintiffs Somerset Orthopedic Associates, P.A. ("Somerset"); Spine Surgery Associates & Discovery Imaging, P.C. ("SSADI"); Paul V. Vessa, M.D.; and James Dywer, M.D., filed briefs in opposition to each motion (D.E. 120, 126, 127, 131, 133), to which

Defendants replied (D.E. 121, 123, 128, 129, 132).[1]  Horizon also filed a notice supplemental authority (D.E. 134), to which all Defendants joined, and Plaintiffs filed a letter in response (D.E. 134).  The Court reviewed the parties' submissions and decides the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons set forth below, Defendants' motions are **GRANTED in part** and **DENIED in part**.

### I.   FACTUAL[2] AND PROCEDURAL BACKGROUND

Briefly, Plaintiffs, healthcare providers in New Jersey, allege that Defendants' failure to fully reimburse Plaintiffs for the cost of medical care provided to eleven patients violates state and

---

[1] The Anthem Defendants' brief in support of their motion (D.E. 119-1) will be referred to as "Anthem Defs. Br."; Highmark's brief in support of its motion (D.E. 122-1) will be referred to as "Highmark Br."; Colgate's brief in support of its motion (D.E. 124-1) will be referred to as "Colgate Br."; Horizon's brief in support of its motion (D.E. 125-1) will be referred to as "Horizon Br."; and the BCBSAL Defendants' brief in support of their motion (D.E. 130-1) will be referred to as "BCBSAL Defs. Br.".  Plaintiffs' opposition to the Anthem Defendants' motion (D.E. 120) will be referred to as "Anthem Defs. Opp."; Plaintiffs' opposition to Highmark's motion (D.E. 133) will be referred to as "Highmark Opp."; Plaintiffs' opposition to Colgate's motion (D.E. 126) will be referred to as "Colgate Opp."; Plaintiffs' opposition to Horizon's motion (D.E. 127) will be referred to as "Horizon Opp."; and Plaintiffs' opposition to the BCBSAL Defendants' motion (D.E. 131) will be referred to as "BCBSAL Defs. Opp.".  The Anthem Defendants' reply brief (D.E. 121) will be referred to as "Anthem Defs. Reply"; Highmark's reply brief (D.E. 123) will be referred to as "Highmark Reply"; Colgate's reply brief (D.E. 129) will be referred to as "Colgate Reply"; Horizon's reply brief (D.E. 128) will be referred to as "Horizon Reply"; and the BCBSAL Defendants' reply brief (D.E. 132) will be referred to as "BCBSAL Defs. Reply".  Horizon's notice of supplemental authority (D.E. 134) will be referred to as "Horizon Supp. Auth." and Plaintiffs' letter in reply (D.E. 139) will be referred to as "Supp. Auth. Ltr.".

[2] The factual background is taken from Plaintiffs' SAC.  D.E. 89.  When reviewing a motion to dismiss, a court accepts as true all well-pleaded facts in a complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Moreover, "courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."  *Goldenberg v. Indel, Inc.*, 741 F. Supp. 2d 618, 624 (D.N.J. 2010) (quoting *Lum v. Bank of Am.*, 361 F.3d 217, 222 n.3 (3d Cir. 2004)).  Here, Plaintiffs include an example of an assignment of benefits and power of attorney as exhibits to the complaint.  *See* SAC, Exs. B, C.  Accordingly, the Court considers these documents.  The Court also considers the plan documents at issue because they are explicitly relied on and quoted in the SAC.  *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002) (ruling that, in deciding a motion to dismiss, a court may rely on "a document integral to or explicitly relied upon in the complaint").

federal law.  The patients were insured under different health benefit plans that are provided and administered by Defendants.  Plaintiffs are out-of-network providers under each plan at issue.  Plaintiffs allege that they obtained an assignment of benefits (an "AOB") from each patient and that each patient executed a power of attorney ("POA"), both of which purportedly authorize Plaintiffs to pursue claims for payment.  Thus, Plaintiffs assert their claims on behalf of the patients via the AOBs and the POAs.  Plaintiffs largely seek reimbursement for the full amount that they billed for the medical services, or the usual, customary, and reasonable ("UCR") rate, which Plaintiffs allege is required by each of the health benefit plans at issue.

Plaintiffs filed suit on March 20, 2019, D.E. 1, and filed their Amended Complaint on June 21, 2019, D.E. 40, after some Defendants filed motions to dismiss the initial Complaint.  Among other things, Plaintiffs removed certain state-law based claims in the Amended Complaint and changed the caption to indicate that the claims were brought on behalf of the patients as assignees or attorneys-in-fact.  Counts One through Four of the Amended Complaint asserted claims pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA") and Counts Five through Seven were claims for breach of contract, breach of the implied covenant of good faith and fair dealing, and quantum meruit.  *Id.*  On August 16, 2019, all Defendants filed motions to dismiss the Amended Complaint.  D.E. 60-63.

On April 27, 2020, this Court entered an Opinion and Order that granted in part and denied in part Defendants' motions to dismiss.  D.E. 81, 82.  Among other things, the Court determined that two plans at issue were ERISA exempt plans, so the Court dismissed Plaintiffs' ERISA claims with respect to these patients.  *See* Opinion at 4-6, D.E. 81.  In addition, the Court concluded that plans for ten patients contained enforceable anti-assignment clauses that Defendants did not waive, and that Plaintiffs did not have standing through POAs because the POAs were not valid under the

Revised Durable Power of Attorney Act ("RDPAA"), N.J. Stat. Ann. § 46:2B-8.1, *et seq.* Accordingly, the Court dismissed Plaintiffs' claims to the extent that they were premised on these AOBs and POAs. *Id.* at 8-16. Finally, for those patients whose plans did not contain an anti-assignment clause and for the patients with ERISA exempt plans, the Court dismissed the Amended Complaint in its entirety pursuant to Rule 12(b)(6). *Id.* at 16-20. The Court, however, provided Plaintiffs with thirty days to file another amended complaint to remedy the identified deficiencies. D.E. 82.

Plaintiffs filed the SAC on July 10, 2020. D.E. 89. The SAC includes two new Plaintiffs, Dr. Paul V. Vessa and Dr. James Dwyer, and states that they are asserting claims as attorney-in-fact of certain patients by virtue of newly executed POAs. SAC ¶¶ 10-11, 45-48. Plaintiffs also assert claims against four new Defendants, who employed certain patients and were allegedly the Plan Sponsors and Administrators of the relevant ERISA insurance plans. *Id.* ¶¶ 16-19. Finally, the SAC includes new claims, including claims alleging that Defendants violated certain provisions of the Affordable Care Act ("ACA") and New Jersey regulations because of Defendants improper payment for emergency services provided by an out-of-network healthcare provider, *id.* ¶¶ 316-23, 331-36, and the Healthcare Information Networks and Technologies Act, N.J. Stat. Ann. § 26:1A-132 *et seq.*, due to Defendants' failure to timely remit payments for the healthcare services provided by Plaintiffs, *id.* ¶¶ 324-30. Defendants subsequently filed the instant motions to dismiss, seeking to dismiss the SAC in its entirety pursuant to Rule 12(b)(6). D.E. 120, 126, 127, 131, 133.

## II.   STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to

survive dismissal under Rule 12(b)(6), it must contain sufficient factual matter to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir. 2016). In evaluating the sufficiency of a complaint, district courts must separate the factual and legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements of the elements of a claim are legal conclusions, and therefore, are not entitled to a presumption of truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however, "must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210.

### III. ANALYSIS

#### A. FEDERAL STATUTORY CLAIMS

##### 1. ERISA Exempt Plans

At the outset, Highmark maintains that the ERISA claims must be dismissed as to it because the two Highmark patients were enrolled in plans that are not governed by ERISA.[3] Specifically, Highmark contends that F.M. was a participant in a government plan and D.S. participated in a church plan. Highmark Br. at 7-9. Highmark made this same argument, with

---

[3] Highmark raises this issue in the context of a Rule 12(b)(6) motion to dismiss. While not explicitly raised by the parties, whether a plan falls into a Subsection 4(b) exception to ERISA appears to be an element of a plaintiff's claim rather than a jurisdictional requirement. *See Kaplan v. St. Peter's Healthcare Sys.*, No. 13-2941, 2019 WL 1923606, at *9 (D.N.J. Apr. 30, 2019) ("Plaintiff alleges that the SPHS Plan is a church plan, and this fact is integral to the merits of Plaintiff's claim, not the Court's subject matter jurisdiction.").

respect to the same two patients, in its previous motion to dismiss, and the Court previously dismissed the ERISA claims asserted against the Highmark patients on these grounds. Opinion at 4-6. Now, Plaintiffs state that they are not asserting any ERISA-based claims against Highmark in the SAC. Plfs. Highmark Opp. at 1. Accordingly, for reasons discussed in the prior Opinion, the ERISA-based claims remain dismissed as to Highmark.

### 2. ERISA Standing

In the prior Opinion, the Court determined that certain Horizon, BCBSAL and Anthem plans had unambiguous anti-assignment clauses. As a result, Plaintiffs lacked standing to assert claims by virtue of the AOBs that they obtained from patients who receive benefits through these plans. Opinion at 8-12. Moreover, the Court determined that Defendants did not waive the anti-assignment clauses. *Id.* at 12-13. Although the SAC still includes allegations about the AOBs, Plaintiffs no longer contend that they have standing by virtue of an AOB for those plans that contain anti-assignment clauses.[4] Instead, Plaintiffs argue that they have standing through valid POAs. *See, e.g.*, BCBSAL Opp. at 6-8.

In the Amended Complaint, the Court determined that Plaintiffs lacked standing to assert claims through the POAs because the patients made the Plaintiff medical practices their attorneys-in-fact. The Court concluded that medical practices cannot be attorneys-in-fact under the RDPAA. As a result, Plaintiffs lacked standing to assert claims on any patient's behalf through a POA. *Id.* at 14-16. In the SAC, Plaintiffs now allege that Plaintiffs Vessa and Dwyer, the individual physicians, obtained properly executed POAs from the patients. Plaintiffs further allege that they

---

[4] In the prior Opinion, the Court determined that Plaintiffs have standing to assert claims through AOBs on behalf of M.H., P.M. and B.M., who all had Horizon plans that did not contain an anti-assignment clause. Opinion at 16. Plaintiffs still maintain that they have standing to assert claims against Horizon for these patients through their AOBs, SAC ¶ 39, and Horizon does not appear to challenge this allegation in its instant motion to dismiss.

6

have standing to assert ERISA claims on behalf of these patients by virtue of these POAs.  SAC ¶ 46.  Horizon, Anthem, and BCBSAL contend that Plaintiffs cannot obtain standing through a valid POA.[5]  *See, e.g.*, Horizon Br. at 33-39.

In *American Orthopedic & Sports Medicine v. Independence Blue Cross Blue Shield*, 890 F.3d 445 (3d Cir. 2018), the Third Circuit recognized that there is a critical difference between an assignment and a power of attorney.  Unlike an assignment, "[a] power of attorney . . . does not transfer an ownership interest in the claim, but simply confers on the agent the authority to act on behalf of the principal."  *Am. Orthopedic*, 890 F.3d at 454-55 (internal quotations omitted).  Accordingly, an anti-assignment clause in a plan does not impact a valid power of attorney.  *Id.* at 455.

The Third Circuit, however, did not ultimately address whether the power of attorney at issue was valid or conveyed standing because the Circuit concluded that the appellant had waived its arguments concerning the power of attorney.  *Id.*; *see also Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 228 (3d Cir. 2020) (recognizing that the Circuit "left open the possibility that a patient could grant her provider a valid power of attorney to pursue claims for benefits on her behalf").  But courts that have addressed this issue after *American Orthopedic* appear to acknowledge that healthcare provider may have standing to assert claims on behalf of a patient through a POA, even if the plan at issue contains an anti-assignment clause.  *See, e.g.*, *Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, No. 17-13086, 2018 WL 4089062, at *2 n.2 (D.N.J. Aug.

---

[5] Section 502(a)(3) is a "catchall" provision that provides equitable relief "to redress any act or practice which violates any provision of ERISA." *Laufenberg v. Ne. Carpenters Pension Fund*, No. 17-1200, 2019 WL 6975090, at *10 (D.N.J. Dec. 18, 2019).  Among other things, Section 502(a)(3) may provide relief for a "breach of the statutorily created fiduciary duty of an administrator." *Id.* (quoting *Hocheiser v. Liberty Mut. Ins. Co.*, No. 17-6096, 2018 WL 1446409, at *5 (D.N.J. Mar. 23, 2018)).  Although Plaintiffs reference Section 502(a)(3) in the SAC, it is not entirely clear if Plaintiffs are actually asserting a claim under this subsection.

7

27, 2018) (noting that the discussion about POAs in *American Orthopedic* was dicta but "we see no reason to doubt the solidity of the proposition" that a POA can confer standing); *Enlighted Sols., LLC v. United Behavioral Health*, No. 18-6672, 2018 WL 6381883, at *5 (D.N.J. Dec. 6, 2018) (concluding that "a valid anti-assignment clause does not preclude a medical provider who holds a valid power of attorney from asserting the participant's claims against the ERISA plan").

BCBSAL maintains that the POA "is simply an artifice to avoid the Plan's unambiguous prohibition against assignment of claims." BCBSAL Defs. Reply at 6-7. BCBSAL continues that on public policy grounds, Plaintiffs should not be allowed to circumvent the intent of the plan. But as discussed, the Third Circuit recognized that an anti-assignment clause does not have any bearing on the ability to act through a valid power of attorney. *Am. Orthopedic*, 890 F.3d at 455. BCBSAL also argues that the Third Circuit limited the application of POAs to those executed "in appropriate circumstances." BCBSAL Defs. Reply at 7 (quoting *Am. Orthopedic*, 890 F.3d at 454-55). As recognized in the prior Opinion, the Third Circuit outlined circumstances where a POA might be appropriate. Specifically, the Circuit explained that within the healthcare context, patients may utilize a POA

> where patients must rely on their agents when they anticipate even short-term incapacitation after medical procedures, *see Powers v. Fultz*, 404 F.2d 50, 51 (7th Cir. 1968), and where those who anticipate longer-term unavailability, like deployed service members or those suffering from progressive conditions, depend on their designated agents to handle their medical claims and other affairs in their absence, *see, e.g.*, *Bartholomew v. Blevins*, 679 F.3d 497, 499 (6th Cir. 2012) (deployed service members); *Jay E. Hayden Found. v. First Neighbor Bank, N.A.*, 610 F.3d 382, 384 (7th Cir. 2010) (incompetent person).

*Am. Orthopedic*, 890 F.3d at 455. Although the Court recognizes the POA was not executed under circumstances discussed by the Circuit, the Circuit did not limit the use of a POA solely to those circumstances. To the contrary, the Third Circuit merely pointed to the foregoing language as

illustrative of why POAs were fitting in the healthcare context. *Id.* Indeed, the *American Orthopedic* court confronted factual circumstances akin to the present manner (that is, a POA executed after the insurance company declined to pay the requested amount) and, as noted, the Circuit found that POAs were permissible even when anti-assignment clauses were present. *Id.* at 448, 454-55.

Moreover, although the RDPAA appears to contemplate that a POA would be executed in the case of disability or incapacity of the principal, *see, e.g.*, N.J. Stat. Ann. §§ 46:2B-8.2, 8.3, nothing in the RDPAA explicitly limits the use of a POA to those circumstances. As a result, there does not seem to be any legal requirement that would prevent using a POA in the manner that Plaintiffs do so here.

Finally, the Anthem Defendants contend that Plaintiffs do not have standing because they are not asserting claims on behalf of the patients. Anthem Defs. Br. at 14-17. In addition, Horizon submitted supplemental authority informing the Court of a recent opinion from Judge Kugler, *O'Brien v. Aetna, Inc.*, that addressed this issue. *See* Horizon Supp. Auth. A POA "simply confers on the agent the authority to act 'on behalf of the principal.'" *Am. Orthopedic*, 890 F.3d at 454. A POA "does not enable the grantee to bring suit in his own name." *O'Brien*, No. 20-5479, 2021 WL 689113, at *3 (D.N.J. Feb. 23, 2021) (quoting *N.J. Spine & Orthopedics, LLC v. Bae Sys., Inc.*, No. 18-10735, 2020 WL 491258, at *2 (D.N.J. Jan. 29, 2020)). Thus, in *O'Brien*, Judge Kugler dismissed the complaint because the claims were brought by the out-of-network medical providers in their own name, who did not indicate that they were bringing claims on behalf of any patients. *Id.* at *2. Here, by comparison, the SAC pleads that Vessa and Dywer are asserting claims as attorneys-in-fact for certain patients. SAC ¶¶ 10-11; 45-46. Further, for each patient at issue, the SAC sets forth the amount of money for which the patient was responsible to pay after

9

Defendants' payments. *See, e.g.*, *id.* ¶ 92 (pleading that Horizon underpaid the surgeon leaving "M.H. with a cost share of $48,055"). As a result, the Court rejects Horizon and the Anthem Defendants' argument.

The Anthem Defendants also contend that because Plaintiffs Somerset and SSADI have not elected to balance bill their patients for the unpaid amounts, the patients have no injury. Anthem Defs. Br. at 16. These factual allegation are not found in the SAC and when viewing the pleading in a light most favorable to Plaintiffs, who allege, for example, M.H. was left with the cost of $48,055, it is more than plausible to infer that M.H. remains responsible for this amount. *See Prof'l Orthopedic Assocs., PA v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2015 WL 4387981, at *9 (D.N.J. July 15, 2015) (concluding that healthcare provider plaintiffs' allegations about harm were sufficient despite absence of allegations that patients actually paid portion of bill because "[t]here are no allegations that the Provider Plaintiffs have forgiven or will forgive the outstanding medical charges"). Consequently, the Court disagrees with the Anthem Defendants' arguments.

In sum, Plaintiffs' allegations in the SAC sufficiently demonstrate that for the patients with valid POAs, Plaintiffs are asserting claims on behalf of those patients for the outstanding amounts due. Defendants fail to identify any legal impediment suggesting that Plaintiffs cannot have standing through a validly executed POA. As a result, Plaintiffs have standing to assert ERISA claims on behalf of the three Horizon patients whose plans do not contain an anti-assignment clause through their AOBs and on behalf of the remaining patients through the POAs.

### 2. Failure to State a Claim

Because Plaintiffs have standing, the Court turns to Defendants' remaining arguments for dismissal.

### a. Counts I and II

In Count One, Plaintiffs seek to recover the unpaid amounts that they allege are owed to them under the relevant plans pursuant to ERISA § 502(a)(1)(B) and (a)(3).[6] SAC ¶ 249. Count Two is pled in the alternative, and Plaintiffs allege that Defendants violated their fiduciary duty of loyalty owed to Plaintiffs as beneficiaries of the plans because Defendants did not reimburse at the UCR rate, pursuant to ERISA § 502(a)(2) and § 404(a)(1). *Id.* ¶ 260-64. Horizon, Colgate, and the Anthem Defendants argue, among other things, that Counts One and Two must be dismissed because Plaintiffs fail to demonstrate that the plans required Defendants to pay 100% of the billed charges and that Plaintiffs still cannot tie their claims to any actual plan terms. *See, e.g.*, Horizon Br. at 40-43.

Section 502(a)(1)(B) provides a plaintiff with the right "to recover benefits due to him under the terms of his plan, [and] to enforce his rights under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). "A plaintiff seeking to recover under [this section] must demonstrate that the benefits are actually 'due'; that is, he or she must have a right to benefits that is legally enforceable against the plan." *K.S. v. Thales USA, Inc.*, No. 17-4789, 2019 WL 1895064, at *4 (D.N.J. Apr. 29, 2019) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 575 (3d Cir. 2006)). For example, in *Atlantic Plastic and Hand Surgery, PA v. Anthem Blue Cross and Health Insurance Co.*, No. 17-4600, 2018 WL 1420496, *10 (D.N.J. Mar. 22, 2018), Chief Judge Wolfson determined that the complaint failed to plausibly state a claim for denial of benefits pursuant to Section 502(a). Chief Judge Wolfson explained that the allegations that the defendants failed to pay the usual and customary amount did not indicate that the defendants were required to do so under the applicable plan. *Id.* The Chief Judge also noted that several courts have dismissed similar ERISA counts

when the complaint failed to identify the plan provision that was allegedly violated. *Id.* at *11 (citing *Piscopo v. Pub. Serv. Elec. & Gas Co.*, No. 13–552, 2015 WL 3938925, at *5 (D.N.J. June 25, 2015), *aff'd*, 650 F. App'x 106 (3d Cir. 2016)); *see also K.S.*, 2019 WL 1895064, at *4 (dismissing claim for full payment to out-of-network provider pursuant to Section 502(a) because "the Amended Complaint fails entirely to specify which portion of the Thales Plan the alleged underpayment violated").

This Court previously dismissed Plaintiffs' claim under § 502(a)(1)(B) because Plaintiffs failed to identify any plan language to support their allegation that they are entitled to be fully compensated for their billed rates. Opinion at 17. Yet, Counts One and Two of the SAC are virtually identical to the claims dismissed in Plaintiffs' prior pleading. Although Plaintiffs point to certain plan language, the identified portions fail to establish that Defendants are liable for the billed amounts.

For P.G. and R.G., Plaintiffs point to the explanation of "Reasonable and Customary" to demonstrate that the plan supports their claim for full reimbursement. *See* SAC ¶¶ 72, 84. "Reasonable and Customary" considers the range of fees charged by doctors in the same geographic area for similar services. *See id.* ¶ 72, 85. But Plaintiffs fail to allege that their billed amounts fall into the reasonable and customary definition for the applicable plan or that the definition of reasonable and customary is equivalent to UCR rates. For M.H., P.M., and J.O., Plaintiffs allege that they should have been paid in accordance with the UCR rates "set by the industry standard Fair Health." SAC ¶¶ 93, 100, 117, 125. But there is no reference to Fair Health or UCR rates in M.H., P.M., or J.O's plans.

Next, Plaintiffs allege that A.M. received care that was billed as an emergency service, and that under A.M.'s plan, emergency care is covered at an in-network level regardless of whether

the care was provided by an out-of-network provider. SAC ¶ 109. The plan provides that emergency care is "covered at 80% of the maximum allowable amount after you meet the deductible." Sirota Decl., Ex. C at 41. But again, Plaintiffs fail to allege that their fees were equal to or less than the maximum allowable amount or that A.M. already met his deductible. Plaintiffs also allege that B.M. received emergency care, which according to the plan, should have been billed as if the care was provided by an in-network provider. SAC ¶ 152. Plaintiffs, however, also allege that payment is only improper if it is not greater than the UCR or Medicare amount. *Id.* This language does not appear in B.M.'s plan. In addition, for each patient that received emergency care, Plaintiffs allege that the ACA requires that they are paid a certain amount. *See, e.g., id.* ¶ 83. Assuming the accuracy of this argument, this requirement is not based on plan language and imposes an independent duty on Defendants, separate from the plan documents.

As for M.R. and B.S., Plaintiffs allege that their plans provide that the Board of Directors of the New Jersey Small Employer Health Benefits Program determines what is an allowed charged, and that this entity uses a "methodology similar to that of Fair Health" to determine UCR rates. SAC ¶¶ 168, 179. But while Plaintiffs allege that they were excessively underpaid for M.R. and B.S.'s care, they fail to plead that their billed rates were in accordance with rates approved by the Board.

In sum, Plaintiffs fail to identify any plan terms demonstrating that Plaintiffs should have been paid their full billed amount. Moreover, although Plaintiffs allege that they should have been paid in accordance with UCR rates, Plaintiffs do not even allege in Counts One or Two that the patients at issue were billed at UCR rates.[7] As a result, Counts One and Two are dismissed.

---

[7] In their opposition brief to Horizon's motion to dismiss, Plaintiffs argue that "the SAC alleges that Horizon failed to pay the UCR charges." Horizon Opp. Br. at 19. Plaintiffs allege that non-participating providers are entitled to be reimbursed at UCR rates, SAC ¶ 31, but with respect to

### b. Count III

In Count Three, Plaintiffs assert a claim for attorney's fees and costs pursuant to Section 502(g)(1). SAC ¶¶ 270-74. ERISA provides for an award of attorney's fees and costs to parties that prevail on a cause of action authorized by the statute. 29 U.S.C. § 1132(g)(1). Here, Plaintiffs' ERISA claims are otherwise dismissed; Plaintiffs cannot prevail on dismissed counts. Consequently, Count Three is also dismissed.

### c. Count XII

In Count XII, Plaintiffs assert a claim against Anthem, Horizon and Oldcastle alleging that their failure to pay Plaintiffs' billed emergency service rates violates the ACA. SAC ¶¶ 331-36. Plaintiffs allege that they have an implied private right of action under the ACA. *Id.* ¶ 335. "[P]rivate rights of action to enforce federal law must be created by Congress." *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). When faced with the question of whether a private right of action exists, a court must determine "whether [the statute] displays an intent to create not just a private right but also a private remedy." *Id.* Moreover, whether a statute creates an implied right of action is a matter of statutory construction. *See Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) ("The question of the existence of a statutory cause of action is, of course, one of statutory construction."). "[U]nless [the] congressional intent can be inferred from the language of the statute, the statutory structure, or some other source, the essential predicate for implication of a private remedy simply does not exist." *Lawrence Twp. Bd. Educ. v. New Jersey*, 417 F.3d 368, 371 (3d Cir. 2005) (quoting *Thompson v. Thompson*, 484 U.S. 174, 179 (1988)).

---

Counts One or Two, Plaintiffs fail to allege that they billed at UCR rates or were not paid the UCR rates. Plaintiffs cannot amend their pleading through a brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984))).

The statute at issue here, 42 U.S.C. § 300gg-19a, is entitled "Patient protections" and imposes specific requirements on what health insurers must provide in applicable insurance plans. Subsection (b), and its implementing regulations, address coverage for emergency services. 42 U.S.C. § 300gg-19a(b). Congress created a private right of action to enforce other sections of the ACA. *See* 42 U.S.C. § 18116(a). Congress, however, did not provide an express right of action to enforce the emergency services requirement or any other requirement addressed in § 300gg-19a. The creation of a remedy in one section of a statute but not another implies that the omission was intentional. *See Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*, 677 F.3d 178, 186 (3d Cir. 2012) ("[W]here the same statute contains private causes of action in other sections. . . , 'it is highly improbable that Congress absentmindedly forgot to mention an intended private action.'" (quoting *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 20 (1979)). Of course, this omission is entitled to less weight if there are important differences in the provisions at issue. *See, e.g.*, *Am. Orthopedic*, 890 F.3d at 450-51 (discussing different considerations between ERISA's pension and welfare/healthcare provisions). Moreover, other courts have already determined that there is no implied private right of action to enforce other provisions of the ACA that do not have an express right of action. *See, e.g.*, *Assoc. of N.J. Chiropractors, Inc. v. Horizon Healthcare Servs., Inc.*, No. 16-8400, 2017 WL 2560350, at *4 (D.N.J. June 13, 2017) ("In short, § 2706 [of the ACA] is devoid of any rights-creating language, and, because Congress did not prescribe a private remedy in that section, there is no basis for finding that Congress intended to create a private right of action by implication."); *Mills v. Bluecross Blueshield of Tenn., Inc.*, No. 15-552, 2017 WL 78488, at *6 (E.D. Tenn. Jan. 9, 2017) (concluding that there is no private right of action for individual plan members to enforce the ACA because Congress "expressly left enforcement of these requirements to the states and the Secretary

15

of Health and Human Services, not individuals"). Although Plaintiffs point out that no court has specifically addressed § 300gg-19a(b), *see* Horizon Opp. at 30, the Court sees no reason to treat this subsection differently. Finally, there is no discussion of a remedy for patients to enforce non-compliance by an insurer in § 300gg-19a. As a result, the Court will not infer a private right of action here. Count XII, therefore, is dismissed.

### B. STATE LAW CLAIMS (Counts IV through XI)

The remaining counts of the SAC are premised on New Jersey law. To adjudicate a case, a federal court must have either federal question or diversity jurisdiction. 28 U.S.C. §§ 1331, 1332; *see also Rockefeller v. Comcast Corp.*, 424 F. App'x 82, 83 (3d Cir. 2011). Here, the parties are not diverse. *See* SAC ¶¶ 7-22 (alleging that Plaintiffs and at least one defendant are citizens of New Jersey). Instead, the Court's jurisdiction is based on Plaintiffs' ERISA claims. *Id.* ¶ 23. Consequently, this Court has supplemental jurisdiction over Plaintiffs' state law claims by virtue of 28 U.S.C. § 1367(a). *Id.* ¶ 24.

28 U.S.C. § 1367(c), however, gives district courts discretion to decline to hear state law claims they would otherwise have supplemental jurisdiction to entertain pursuant to § 1367(a). Specifically, § 1367(c)(3) provides that a "district court[] may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). Thus, retaining supplemental jurisdiction is a matter of discretion. *Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995). Further, the Third Circuit has determined that "where the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." *Id*. Again, while the determination is discretionary,

"[t]he general approach is for a district court to . . . hold that supplemental jurisdiction should not be exercised where there is no longer any basis for original jurisdiction." *Shaffer v. Township of Franklin*, No. 09-347, 2010 WL 715349, at *1 (D.N.J. Mar. 1, 2010); *see also United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (encouraging federal courts to avoid "[n]eedless decisions of state law"); *Markowitz v. Ne. Land Co.*, 906 F.2d 100, 106 (3d Cir. 1990) ("[T]he rule within this Circuit is that once all claims with an independent basis of federal jurisdiction have been dismissed the case no longer belongs in federal court."). As discussed, Plaintiffs' federal law claims are dismissed, and those claims formed the basis of the Court's subject matter jurisdiction. As a result, the Court does not reach any issues concerning the counts over which it exercises supplemental jurisdiction.

## IV.   CONCLUSION

For the reasons stated above, Defendants' motions to dismiss (D.E. 119, 122, 124, 125, 130) are **GRANTED in part** and **DENIED in part**. Defendants' arguments regarding standing are **DENIED** but their arguments regarding the dismissal of Plaintiffs' ERISA and ACA claims pursuant to Rule 12(b)(6) are **GRANTED**. Accordingly, Plaintiffs' ERISA and ACA claims are dismissed without prejudice. Plaintiffs are provided with thirty (30) days to file an amended pleading that cures the deficiencies noted herein. Alternately, if Plaintiffs choose not to replead their federal claims, Plaintiffs should notify the Court before the thirty days expire as this Court lacks subject matter jurisdiction over Plaintiffs' remaining state law claims. If Plaintiffs do not file an amended pleading, its state law claims will be dismissed for lack of jurisdiction. An appropriate Order accompanies this Opinion.

**Dated**: August 18, 2021

John Michael Vazquez, U.S.D.J.